IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |  | |
|---|---|---|---|
| **MATTHEW JAMES HUDGINS,** | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | Civil Action No. 7:16-cv-506 | |
| | ) | | |
| **NANCY A. BERRYHILL,** | ) | | |
| Acting Commissioner of Social Security, | ) | **By: Hon. Robert S. Ballou** | |
| | ) | **United States Magistrate Judge** | |
| Defendant. | ) | | |

## **REPORT AND RECOMMENDATION**

Plaintiff Matthew James Hudgins ("Hudgins") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled and therefore not eligible for supplemental security income ("SSI"), and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Specifically, Hudgins alleges that the Administrative Law Judge ("ALJ") erred by asking a hypothetical question to the vocational expert ("VE") which did not account for Hudgins's moderate limitations in concentration, persistence, and pace and declining to give more weight to the opinion of consultative examiner Julia Ewen, M.D. I conclude that substantial evidence supports the Commissioner's decision on all grounds. Accordingly, I **RECOMMEND DENYING** Hudgins' Motion for Summary Judgment (Dkt. No. 18), and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. No. 19).

## **STANDARD OF REVIEW**

This Court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Hudgins failed to demonstrate that he was disabled

1

under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Hudgins protectively filed for SSI and DIB on October 3, 2013, claiming that his disability began on July 3, 2012. R. 227–39. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 73–74, 121, 138. On April 12, 2016, ALJ Geraldine H. Page held an administrative hearing to consider Hudgins's disability claim. R. 35–67. Hudgins was represented by an attorney at the hearing, which included testimony from Hudgins and VE John Newman. Id.

On May 25, 2016, the ALJ entered her decision analyzing Hudgins's claim under the familiar five-step process,[2] and denying his claim for disability. R. 18–31. The ALJ found that

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Heckler v. Campbell, 461 U.S. 458, 460–62 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

Hudgins suffered from the following severe impairments: obesity, diabetes mellitus with neuropathy, patella-femoral pain syndrome, depression, anxiety, borderline intellectual functioning, and a hearing disorder. R. 20. The ALJ further found that Hudgins retained the RFC to perform sedentary work, but he is restricted to occasionally pushing and pulling with the bilateral lower extremities, kneeling, crouching, stooping, balancing, and climbing ramps and stairs. However, the ALJ explained that Hudgins can never: crawl; climb ladders, ropes, and scaffolds; work on vibrating surfaces; work at unprotected heights; be exposed to hazardous machinery; and work around excessively loud background noise. R. 23. The ALJ further explained that Hudgins "can understand, remember, and carry out simple instructions in repetitive, unskilled work that involves only occasional interaction with the general public." Id. The ALJ determined that Hudgins could not return to his past relevant work as a fast food worker and dishwasher, but that he could work as an assembler, packer, and inspector/tester/sorter. R. 31. Thus, the ALJ concluded that Hudgins was not disabled. Id.

Hudgins appealed the ALJ's decision to the Appeals Council, but his request for review was denied. R. 1. This appeal followed.

## ANALYSIS

Hudgins challenges the ALJ's decision on two grounds: (1) the ALJ improperly relied upon the VE's testimony because the hypothetical question to the VE did not account for Hudgins's moderate limitations in concentration, persistence, and pace; and (2) the ALJ failed to give the most weight to Dr. Ewen, a consultative examiner. See Dkt. No. 18, at 1.

**Concentration, Persistence, and Pace**

Hudgins challenges the hypothetical question to the VE because it failed to account for all of his functional limitations. See id. at 9. Specifically, Hudgins asserts that the "hypothetical

3

question was incomplete because the RFC does not account for [Hudgins's] ability to stay on task with respect to concentration, persistence, or pace. Further the ALJ failed to explain why this limitation does not affect [Hudgins's] ability to work." Id. at 11. The ALJ must present to the VE a hypothetical question which accurately reflects a claimant's functional limitations. Otherwise, the VE cannot reliably testify to a claimant's work capacity. Here, the focus is on whether the RFC and subsequent hypothetical correctly reflected limitations Hudgins has in the areas of concentration, persistence, and pace.

In Mascio v. Colvin, the Fourth Circuit held that an ALJ does not generally account for a claimant's limitations in concentration, persistence, or pace by restricting the claimant to simple, routine tasks or unskilled work. The court noted, "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." 780 F.3d 632, 638 (4th Cir. 2015); see also Sexton v. Colvin, 21 F. Supp. 3d 639, 642–43 (W.D. Va. 2014) (citing Wiederholt v. Barnhart, 121 Fed. App'x 833, 839 (10th Cir. 2005) (holding that a "limitation to simple, unskilled work does not necessarily" accommodate a person's difficulty in concentrating on or persisting in a task, or maintaining the pace required to complete a task)). In Mascio, the Fourth Circuit found that the ALJ did not explain why Mascio's moderate limitation in concentration, persistence, or pace did not translate into a limitation in his RFC. Mascio, 780 F.3d at 638. The court noted, however, that the ALJ may find that the concentration, persistence, or pace limitation would not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. Id.; see also Hutton v. Colvin, No. 2:14-cv-63, 2015 WL 3757204, at *3 (N.D. W. Va. June 16, 2015).

4

Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision, especially where, as the ALJ held in Mascio, a claimant's concentration, persistence, or pace limitation does not affect the ability to perform simple, unskilled work. See Mascio, 780 F.3d at 638. The ALJ's responsibility to highlight the evidence of record that supports his conclusion was further emphasized in Monroe v. Colvin, where the court found that the ALJ must provide a sound basis for his ruling, including discussing what evidence he found credible and specifically apply the law to the record. 826 F.3d 176, 189 (4th Cir. 2016).

The Mascio court relied upon Winschel v. Comm'r of Soc. Sec., where the court rejected the argument that an ALJ generally accounts for a claimant's limitations in concentration, persistence, or pace by restricting the claimant to simple, routine tasks or unskilled work. 631 F.3d 1176, 1180 (11th Cir. 2011). However, the Winschel court explained that:

> when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations. Additionally, other circuits have held that hypothetical questions adequately account for a claimant's limitations in concentration, persistence, and pace when the questions otherwise implicitly account for these limitations.

Id. (internal citations omitted). Courts within the Fourth Circuit have come to rely upon Winschel's reasoning to comply with Mascio. See St. Clair v. Colvin, No. 7:13cv571, 2015 WL 5310777, at *7 (W.D. Va. Sept. 11, 2015) (ALJ properly relied upon the opinion of consultative physician that plaintiff's impairment in concentration, persistence, or pace did not prevent him from performing simple, repetitive tasks); Del Vecchio v. Colvin, No. 1:43cv116, 2015 WL

5

5023857, at * 5 (W.D.N.C. Aug. 25, 2015) (ALJ's reliance upon the opinion of state agency medical consultant that plaintiff could complete simple tasks even with moderate limitations in concentration, persistence, or pace satisfied the explanation necessary to support the RFC limitations); Geisler v. Comm'r Soc. Sec. Admin., No. SAG–14–2857, 2015 WL 4485459, at *5 (D. Md. July 21, 2015) (ALJ properly relied on the opinions of state agency physicians that plaintiff's impairment in concentration, persistence, or pace does not prevent him from performing simple, spoken instructions and simple routine tasks).

Likewise, in Hutton v. Colvin, the court held that a restriction of "unskilled work" accounted for a claimant's limitations with concentration, persistence, or pace where the ALJ examined the claimant's ability to perform daily activities such as paying bills and counting change in the step four analysis, and noted that his treating physicians found that he exhibited good attention, logical thought flow, and good immediate and recent memory. 2015 WL 3757204, at *3–5. The court found that these reasons constituted an "abundant explanation" for the ALJ's RFC findings regarding the claimant's concentration limitations, and thus there was no error in the ALJ's conclusion that the claimant could perform unskilled work. Id.

Thus, Mascio reiterates the long-held proposition that substantial evidence in the record must support the limitations contained in the RFC and included in the hypothetical question presented to the vocational expert. An ALJ may account for a claimant's limitation with concentration, persistence, or pace by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

In this case, substantial evidence supports the ALJ's determination that Hudgins has moderate impairments in concentration, persistence, or pace and that he retains the RFC to perform work consistent with those limitations. The ALJ acknowledged that "Hudgins testified that he sometimes gets nervous and depressed, which could affect concentration, persistence, and pace." R. 23. Nevertheless, the ALJ found that Hudgins retained the RFC to "understand, remember, and carry out simple instructions in repetitive, unskilled work that involves only occasional interaction with the general public." Id. This RFC is consistent with the evidence in the record. Additionally, the hypothetical posed to the VE adequately conveyed this well-supported RFC and included Hudgins's moderate impairments in concentration, persistence, and pace, and the testimony elicited thereby is therefore relevant.

Prior to the relevant period,[3] Hudgins dealt with intellectual deficiencies. In high school, Hudgins was placed in special education. R. 320. In 2002, Hudgins had a Full Scale Intelligence Estimate of 74, placing him "within the Borderline Ranges of cognitive/intellectual abilities." R. 348–49. Hudgins worked at Food Lion during the 2000–01 school year, at the Virginia Tech Greenhouses during the 2001–02 school year, and at the Virginia Tech West End Restaurant during both the 2001–02 and 2002–03 school years. R. 321. The ALJ concluded that the various jobs Hudgins held during high school "suggest[ed] he was successful in his employment." R. 26.

In March 2009, two years before the relevant period, Mark Perez-Lopez, Ph.D., diagnosed Hudgins with provisional mental retardation. R. 529. Dr. Perez-Lopez stated that Hudgins "possesses extremely low intellectual functioning that likely impacts his ability to function independently." Id. Dr. Perez-Lopez discussed Hudgins' work history over the previous seven years as well as his then-current work at a Subway restaurant, noting that Hudgins claimed

---

[3] The relevant period ranges from July 3, 2012—the alleged date of the onset of disability—through May 25, 2016—the date the ALJ rendered her decision.

"he has difficulty getting along with others" and that it "has negatively impacted his ability to work." R. 528. Dr. Perez-Lopez explained, however, that Hudgins's "ability to understand or remember simple one or two step commands and perform repetitive work is judged within normal limits." R. 530. The ALJ accorded Dr. Perez-Lopez's opinion limited weight because it was rendered before the relevant period, but noted that Dr. Perez-Lopez's assessment of Hudgins's ability to stay on task at work was "generally consistent with the medical evidence of record." R. 26.

There is only limited evidence of record regarding Hudgins's mental impairments during the relevant period. Hudgins's primary care physician, David M. Hudgins, M.D. (no relation to the plaintiff), diagnosed Hudgins with depression in 2013 and continued to treat him through 2014. R. 471–510. In April 2015, Hudgins was hospitalized for one week after he attempted to jump out of a moving vehicle. R. 571. He was diagnosed with depression and suicidal ideation. R. 571–78. At the administrative hearing, Hudgins testified that he was only in the hospital "to get my medications straightened and to resolve some problems." R. 43. He never went to counseling or was hospitalized again. R. 43–44.

The ALJ's RFC determination that Hudgins is capable of performing sedentary work despite his moderate limitations in concentration, persistence, or pace is supported by substantial evidence. The limited evidence during the relative period regarding Hudgins's limitations in concentration, persistence, or pace required the ALJ to examine the evidence prior to the relevant period as to his functional capacity. No doubt, Hudgins was diagnosed with having below-average cognitive functioning. However, the ALJ noted that Hudgins had numerous jobs both during and after high school, which indicated he was "successful in his employment." R. 26. The ALJ properly concluded that Hudgins could engage in unskilled, repetitive work as long as he

receives simple instructions and has limited interaction with the general public. R. 23 The ALJ addressed Hudgins's problems with concentration, persistence, or pace as she developed the RFC. Hudgins does not identify any evidence the ALJ failed to consider or to address regarding his limitations in concentration, persistence, or pace. I find that substantial evidence supports the RFC that Hudgins "can understand, remember, and carry out simple instructions in repetitive, unskilled work that involves only occasional interaction with the general public." Id.

Likewise, I find that the hypothetical posed to the VE contained no error. At the administrative hearing, the ALJ, based on the evidence of record, asked the VE in pertinent part whether there were any jobs in the regional or national economy for a person with Hudgins's physical impairments and the intellectual ability "to understand, remember, and carry out simple instructions and [perform] repetitive, unskilled work that involves only occasional interaction with the general public." R. 60–61. The hypothetical sufficiently incorporated the RFC, and thus, there is no error in the question posed to the VE.

Hudgins also argues that the ALJ erred when he accepted the testimony of the VE without identifying and resolving conflicts between the VE's testimony and the DOT.

At step five of the sequential evaluation, the ALJ must determine whether, considering the claimant's age, education, and work experience, the claimant is capable of performing other jobs existing in substantial numbers in the national economy. 20 C.F.R. § 404.1520(a)(4). In making findings at steps four and five, an ALJ may rely on the testimony of a vocational expert. SSR 00-4p, 2000 WL 1898704, at *2. The ALJ and the vocational expert are to rely on the DOT to define any jobs the claimant is able to perform in terms of the exertional, non-exertional, and mental activities they require. Id. Furthermore, the ALJ has a duty to identify any apparent conflicts between the vocational expert's testimony and the DOT. Id. ("When there is

9

an apparent unresolved conflict between [vocational expert] . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the [vocational expert's] . . . evidence to support a determination or decision about whether the claimant is disabled.").

In Pearson v. Colvin, the Fourth Circuit held that the ALJ's duty to identify and resolve conflicts with the DOT is independent from any duty the vocational expert may have to identify such conflicts, and that the ALJ's duty extends beyond simply asking the vocational expert whether his testimony is consistent with the DOT. 810 F.3d 204, 208–09 (4th Cir. 2015). Rather, the Fourth Circuit clarified that "the *ALJ* (not the vocational expert)" is required to "'[i]dentify *and* obtain a reasonable explanation' for conflicts between the vocational expert's testimony and the *Dictionary* . . . ." Id. at 208 (citing SSR 00-04p). The Fourth Circuit limited the ALJ's duty to identifying "apparent" conflicts, which it held to mean "that the ALJ must identify where the expert's testimony seems to, but does not necessarily, conflict with the *Dictionary*. For the Ruling [SSR 00-4p] explains that '[i]f the [vocational expert]'s . . . evidence *appears to conflict* with the [*Dictionary*], the adjudicator will obtain a reasonable explanation for the *apparent* conflict.'" Id. at 209.

In Pearson, the apparent conflict at issue involved the degree of reaching required for a job identified by the vocational expert. Id. at 210–11. According to the DOT, the job required frequent reaching, in no specific direction, while the claimant in Pearson was limited to occasional overhead reaching with one arm. Id. The Fourth Circuit found that the ALJ erred by failing to identify and resolve the apparent conflict between the vocational expert's testimony that the claimant could perform the job and the job requirements provided by the DOT. Id.

10

The VE testified that Hudgins was capable of working as an assembler, packer, and inspector/tester/sorter. R. 31. Both the position of packer and inspector/tester/sorter require a reasoning level of 2, which requires the ability to carry out detailed instructions. However, the ALJ's RFC limited Hudgins to jobs that require him to carry out only simple instructions. The job of assembler requires a reasoning level of 1, meaning the employee must be able to understand, remember, and carry out simple instructions, which is consistent with Hudgins' RFC. The VE testified that there are more than 500 assemblers in the regional economy and more than 10,000 assemblers in the national economy. R. 61.

The ALJ committed a Pearson violation when he failed to identify and resolve the apparent conflict between the VE's testimony and the requirements of a packer and an inspector/tester/sorter established by the DOT. There is no evidence that the ALJ considered the issue, made any attempt to resolve it, or reconciled it with the inconsistency in the DOT. However, because the VE correctly identified a job that Hudgins could do that exists in significant numbers in the national economy, the ALJ's failure to comply with Pearson is harmless error. See Collins v. Berryhill, No. 1:17-cv-224, 2018 WL 278667, at *4 (M.D.N.C. Jan. 3, 2018) ("Even if the ALJ failed to identify and resolve any apparent conflicts between the DOT and the VE's testimony as to the jobs of a store laborer and an industrial cleaner, any such failure is harmless error as there was at least one other job identified that Plaintiff could perform: dining room attendant."); see also 20 C.F.R. § 404.1566(b) ("[I]f work that you can do exists in the national economy, we will determine that you are not disabled.").

Accordingly, I find that the ALJ committed no error in crafting Hudgins's RFC or in posing the hypothetical to the VE, and that the ALJ's violation of Pearson is harmless error.

**Consultative Examiner's Opinion**

Hudgins claims that the ALJ erred when she did not give the most weight to the opinion of Julia Ewen, M.D., an internist and consultative examiner.

Dr. Ewen examined Hudgins on July 27, 2013 for the purpose of Hudgins's disability application. R. 856. She noted that Hudgins is "able to do his bathing, washing, dressing himself and cooking for himself. He is able to clean his trailer with frequent breaks." R. 857. Dr. Ewen discussed about two years of Hudgins's prior work history, stating that he stopped working at his dishwasher job "because he could not take the physical labor." Id. She noted that Hudgins "was alert and orientated" and "was able to hear and comprehend normal conversational speech," although he "often had difficulty answering questions." R. 858. She noted that Hudgins was morbidly obese, had very poor balance, and was weak in his lower extremities. R. 859. She diagnosed Hudgins with diabetes with neuropathy causing pronounced loss of balance, osteoarthritis of the knees with quadriceps weakness and frequent falls, depression, and a learning disability. Id. Overall, Dr. Ewen stated that Hudgins can stand and/or walk less than two hours in an eight-hour workday, but can sit for a full eight hours. Id. Dr. Ewen determined that Hudgins can lift and carry about five pounds occasionally and ten pounds frequently, but can never bend, stoop, crouch, or squat. Id.

The state agency physicians reviewed all the evidence of record and came to a less restrictive conclusion than Dr. Ewen. William Rutherford, M.D., determined that Hudgins can lift and/or carry twenty pounds occasionally and ten pounds frequently. R. 98. He concluded that Hudgins can occasionally climb ramps and stairs, stoop, balance, and crouch, but that Hudgins can never kneel, crawl, or climb ladders, ropes, or scaffolds. R. 99. He ultimately concluded that Hudgins could stand and/or walk around two hours in an eight-hour workday, and could sit for

about six hours in an eight-hour workday. R. 98. Josephine Cader, M.D., rendered an almost identical opinion after evaluating the evidence of record, with the only difference being her conclusion that Hudgins could only occasionally lift and/or carry ten pounds. R. 116–17.

Under the Social Security Regulations, the opinion of a claimant's treating physician will receive controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). A "treating physician" is defined as "your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 404.1527(a)(2). "We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability." Id.

When the ALJ evaluates the opinions of non-treating physicians, the ALJ must weigh three factors: "supportability in the form of a high-quality explanation for the opinion and a significant amount of substantiating evidence, particularly medical signs and laboratory findings; consistency between the opinion and the record as a whole; and specialization in the subject matter of the opinion." Brown v. Comm'r Soc. Sec. Admin, 873 F.3d 251, 268 (4th Cir. 2017) (citing 20 C.F.R. § 404.1527(c)(3)–(5)). Among non-treating sources, however, more weight is "generally" given to a source who has examined the claimant than to one who has not. See 20 C.F.R. § 404.1527(c)(1). The ALJ, in evaluating the opinions of treating sources, examining sources, and non-treating, non-examining sources, must explain the conclusions reached and identify the record evidence which supports those conclusions. See Monroe v. Colvin,

13

176 (4th Cir. 2016). Only then can a court meaningfully review whether substantial evidence supports the ALJ's decision.

In August 2012, Hudgins saw his primary care physician, Dr. Hudgins, for issues relating to diabetes. R. 537. Dr. Hudgins noted that he was not taking his diabetes medication and was not checking his blood sugar regularly. Id. Dr. Hudgins noted that Hudgins maintained his employment at IHOP and was "working regularly," and advised him to exercise more, eat healthier, and continue to take his diabetes medication. R. 539. One year later in August 2013, Dr. Hudgins noted that Hudgins had not taken his diabetes medication for at least two months, was not checking his blood sugar levels, and was not dieting or exercising. R. 463–64.

Hudgins returned to Dr. Hudgins in November 2013, complaining of bilateral knee pain and frequent knee dislocation. R. 471. Dr. Hudgins diagnosed "mild tenderness of the subpatellar bursa bilaterally without swelling. Mild apprehension with movement of the patella. Full range of motion. No ligament laxity, no effusion." R. 473. Hudgins was instructed to continue exercising, to maintain a diabetic diet, and to continue losing weight. Id.

Dr. Hudgins referred Hudgins to an orthopedist, Christofer Catterson, M.D., in April 2014. R. 485–86. Dr. Catterson determined that there was "no significant swelling or echymosis" in either knee, and X-rays of both knees showed "no acute fractures[, n]o suspicious bony lesions[, and] . . . no significant osteoarthritic changes." R. 488–89. However, Dr. Catterson did find crepitance in both knees. R. 488–89. Dr. Catterson subsequently recommended therapy for Hudgins's patellofemoral pain. R. 489.

Hudgins returned to see his primary care physician in November 2014, complaining of lower back pain and knee pain. R. 505. Dr. Hudgins noted that he is not getting much exercise, but "is active and does walk some" and "is working." Id. Dr. Hudgins noted no swelling in the

14

knees, as they were mostly sore medially. Id. Additionally, Dr. Hudgins prescribed medication for diabetes, pain, and degenerative arthritis. R. 507. When Hudgins followed up with Dr. Hudgins in March 2015, he continued to complain of pain in his knees. R. 699. Dr. Hudgins made some medication changes and "[s]trongly encouraged [Hudgins] to work on healthy diet and exercise and weight loss." R. 701. After reviewing the evidence in the record, the ALJ accorded "some weight" to Dr. Ewen's opinion that Hudgins could sit for eight hours in an eight-hour workday because it "is well supported by the medical evidence of record, which shows no significant limitations in [Hudgins'] back or upper extremities." Id. The ALJ gave "less weight" to the portion of Dr. Ewen's opinion that Hudgins could stand and/or walk less than two hours in an eight-hour workday because Dr. Ewen did not provide a "cogent justification for a finding of less than typical sedentary work." Id. The ALJ explained that Hudgins was able to walk to and from the evaluation without an assistive device despite his "morbid obesity, shortness of breath, and wide-based gait." Id. Additionally, the ALJ gave less weight to the portion of Dr. Ewen's opinion that Hudgins is incapable of performing most postural movements, as Hudgins's "quadriceps weakness and balance difficulties . . . were not marked or severe." Id.

The ALJ gave the opinions of the state agency physicians "some weight" because "these doctors have a high level of understanding of the Social Security disability program and enjoyed a review of all the available evidence in the record when forming their opinions, rather than the records of only one treating practitioner." R. 28. The ALJ concluded that "the medical evidence of record shows little objective abnormality to support [Hudgins's] allegations"—conclusions the state agency opinions reflect. Id.

Substantial evidence supports the ALJ's decision not to give greater weight to Dr. Ewen's opinions. As a consultative examiner, Dr. Ewen's opinion is "generally" awarded more weight

15

than the opinions of the non-examining state agency physicians. Nevertheless, the ALJ must evaluate all physician opinions using the factors articulated in 20 C.F.R. § 404.1527(c)(3)–(5).

The ALJ properly accorded less weight to the portions of Dr. Ewen's opinion declaring that Hudgins could walk less than two hours in an eight-hour workday and is incapable of most postural movements because this opinion is inconsistent with the record. The record reflects that Hudgins was able to work many different jobs since high school—several of which required greater than sedentary work activity, such as dishwasher and sandwich maker—and even working past his alleged onset of disability. Hudgins received "occasional, routine treatment," did not need an assistive device to move, and was instructed repeatedly by his primary care physician to increase exercise during the relevant period. The ALJ noted this in his detailed narrative of Hudgins' medical records, work history, and history of intellectual disability in the public education system, and concluded that the record indicates that he is able to stand and/or walk for at least two hours in an eight-hour workday. The ALJ found no evidence in the record that Hudgins is incapable of performing sedentary work as Dr. Ewen asserts. Hudgins identified no evidence that the ALJ failed to address which contradicts the ALJ's finding that Hudgins is incapable of sedentary work as Dr. Ewen suggests.

Conversely, the ALJ found that the opinions of the state agency physicians were more consistent with the record and were supported by substantial evidence. While neither state agency physician is a specialist in orthopedics, both rendered opinions that are consistent with Hudgins's routine treatment, work history at jobs requiring standing more than two hours in an eight-hour workday, and lack of medical evidence indicating he is incapable of sedentary work.

Accordingly, I find that the ALJ properly weighed the factors under 20 C.F.R. § 404.1527(c)(3)–(5) when evaluating the opinions of Dr. Ewen and the state agency physicians, and the weight to give these opinions is supported by substantial evidence.

## **CONCLUSION**

It is not the province of the court to make a disability determination. The court's role is limited to determining whether the Commissioner's decision is supported by substantial evidence, and in this case, substantial evidence supports the ALJ's opinion. The ALJ properly considered all of the objective and subjective evidence in adjudicating Hudgins's claim for benefits and in determining that his physical and mental impairments would not significantly limit his ability to do basic work activities. Accordingly, I recommend that the Commissioner's decision be affirmed, the defendant's motion for summary judgment be **GRANTED**, and Hudgins's motion for summary judgment be **DENIED**.

The Clerk is directed to transmit the record in this case to Michael F. Urbanksi, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as

well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

                                                Enter:  February 10, 2018

                                                *Robert S. Ballou*

                                                Robert S. Ballou
                                                United States Magistrate Judge