CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 26 2018

JULIA C. DUDLEY, CLERK
BY: /s/ A. Beeson
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MATTHEW JAMES HUDGINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 7:16cv00506 |
| v. | ) |
| | ) |
| NANCY A. BERRYHILL, | ) By: Michael F. Urbanski |
| Commissioner of Social Security, | ) Chief United States District Judge |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This social security disability appeal was referred to the Honorable Robert S. Ballou, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. The magistrate judge filed a report and recommendation on February 12, 2018, recommending that plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted and the Commissioner's final decision be affirmed. Plaintiff Matthew James Hudgins has filed objections to the report, and this matter is now ripe for the court's consideration.

I.

The objection requirement set forth in Rule 72(b) of the Federal Rules of Civil Procedure is designed to "train[ ] the attention of both the district court and the court of appeals upon only those issues that remain in dispute after the magistrate judge has made findings and recommendations." United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007) (citing Thomas v. Arn, 474 U.S. 140, 147–48 (1985)). An objecting party must do so "with

sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Id. at 622.

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id.

The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); accord 28 U.S.C. § 636(b)(1).

It is not the province of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In so doing, the court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a

reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

## II.[1]

Hudgins objects to the magistrate judge's determination that the Administrative Law Judge (ALJ) reasonably accounted for Hudgins's moderate limitation in concentration, persistence, and pace in his residual functional capacity (RFC) assessment. Hudgins specifically takes issue with the magistrate judge's reliance on his ability to work in various jobs in high school and on the opinion of consultative examiner Mark Perez-Lopez, Ph.D., in finding substantial evidence supports the ALJ's decision in this case. The court cannot agree.

As the magistrate judge correctly noted, there is limited evidence in the record concerning Hudgins's mental impairments during the relevant period. Hudgins was treated for depression and anxiety with medication by his primary care physician, David Hudgins, M.D. (no relation). But Dr. Hudgins's records all reflect normal mental status exams—mood, memory, affect and judgment were all noted to be normal, and there was no evidence

---

[1] Detailed facts about Hudgins's impairments and medical and procedural history can be found in the report and recommendation (ECF No. 21) and in the administrative transcript (ECF No. 12). As such, they will not be repeated here.

3

in Dr. Hudgins's records of any functional limitations stemming from his mental impairments. Indeed, only a few records even mention Hudgins's complaints of any mental impairments.

Hudgins was hospitalized at one point in April 2015 after presenting to the emergency department reporting "everybody thinks I am suicidal." (R. 571.) This followed an incident in which his family wanted to go to the store; Hudgins became aggravated in the car and opened the door to jump out, but eventually closed it. (R. 571.) Upon examination, the emergency room doctor noted he was alert, oriented, in no acute distress, had normal speech, no motor or sensory deficits, normal affect, normal cognitive function, normal judgment/insight, and normal thought processes. (R. 574.) He was transferred from the emergency department to Lewis Gale Pavilion, where his psychological examination was within normal limits. (R. 580.)

Julia Ewen, M.D., performed a consultative examination of Hudgins in 2013, during the relevant period. Her report reveals he was alert and oriented and able to comprehend normal conversational speech. He had difficulty answering questions but was easy to understand. His mood and affect were normal and his thought processes linear. Dr. Ewen noted he had a poor fund of knowledge but normal memory and concentration. (R. 858.) As far as functional limitations, Dr. Ewen found Hudgins had "pronounced communicative limitations as he has difficulty answering questions, has difficulty relating his history due to his learning disability." (R. 860.)

In light of the dearth of evidence concerning Hudgins's mental impairments during the relevant period, the ALJ examined evidence prior to Hudgins's alleged July 3, 2012 onset

date—specifically, his school records dating nearly a decade earlier, which document borderline intellectual functioning and a need for special education services. These school records reveal Hudgins's difficulties with attention and staying on task in terms of completing school assignments but note that, at the time, he was able to maintain competitive employment. (See, e.g., R. 320, 321, 322.)

The ALJ considered the opinion of consultative examiner Mark Perez-Lopez, Ph.D., dating back to 2009, three years before Hudgins's alleged onset date. Dr. Perez-Lopez's report states Hudgins "presents as a very personable young man with limited intellectual functioning and problems associated with interpersonal relationships and self care." (R. 529.) Mental status exam revealed congruent affect within normal limits; logical, relevant and sequential thinking; and no obvious signs of psychotic processes. (R. 529.) Dr. Perez-Lopez's functional assessment read as follows:

> The claimant's ability to understand or remember simple one and two step commands and perform repetitive work is judged within normal limits. His ability to understand and remember complex and detailed commands is judged moderately impaired. His ability to relate to others including co-workers, the public, and supervisors appears to be mildly impaired. His ability to handle work related stressors is judged mildly impaired.

(R. 530.) The ALJ gave this opinion limited weight, because it was rendered before Hudgins's alleged onset date and was not based on intelligence testing. But the ALJ found "[Perez-Lopez's] opinion that the claimant can perform simple, repetitive work with only mild impairment to his ability to relate to others is generally consistent with the medical evidence of record summarized above, which shows the claimant generally interacted normally with treating practitioners and reported performing simple tasks." (R. 26.)

5

The ALJ further considered the opinions of the reviewing state agency psychologists, Daniel Walter, Psy.D., and Alan D. Entin, Ph.D., who found that Hudgins was moderately limited in his ability to carry out detailed instructions, maintain attention and concentration for extended period, and to interact appropriately with the general public, due to his borderline intellectual functioning. But the state agency physicians found Hudgins was not significantly limited in his ability to understand and remember simple instructions, get along with coworkers, and work in coordination with or proximity to others without being distracted by them. (R. 85-86, 118-19.) Dr. Entin further noted that Hudgins "would be limited to simple, routine work that does not require a great deal of interaction due to his borderline intellectual functioning." (R. 119.) The ALJ gave these opinions "some weight," because their conclusions are consistent with the evidence of record—specifically, the fact that Hudgins sought only occasional, routine treatment and the medical records show little in the way of objective abnormality to support his allegations of functional limitations. (R. 28.)

Based on the record evidence, the ALJ determined that Hudgins had the RFC to perform a limited range of sedentary work—in relevant part, that Hudgins "can understand, remember, and carry out simple instructions in repetitive, unskilled work that involves only occasional interaction with the general public." (R. 23.) The magistrate judge held that the ALJ met the requirements of Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015),[2] and reasonably

---

[2] The Fourth Circuit in Mascio joined a number of other circuits in holding an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work. 780 F.3d at 638. However, the court found that the ALJ could explain why moderate limitation in concentration, persistence, and pace at step three does not translate into a limitation in RFC and affect a claimant's ability to work. As discussed infra, that is precisely what the ALJ did here.

accounted for Hudgins's moderate limitation in concentration, persistence and pace in his RFC assessment. The magistrate judge observed that while he struggled with intellectual disabilities in high school, Hudgins was able to work jobs at Food Lion, the Virginia Tech Greenhouses, and the Virginia Tech West End Restaurant during the school year. As the ALJ noted, this "suggest[ed] he was successful in his employment." (R. 26.) The magistrate judge held:

> The ALJ properly concluded that Hudgins could engage in unskilled, repetitive work as long as he receives simple instructions and has limited interaction with the general public. R. 23. The ALJ addressed Hudgins's problems with concentration, persistence, or pace as she developed the RFC. Hudgins does not identify any evidence the ALJ failed to consider or to address regarding his limitations in concentration, persistence, or pace. I find substantial evidence supports the RFC that Hudgins "can understand, remember, and carry out simple instructions in repetitive, unskilled work that involves only occasional interaction with the general public."

Report & Recommendation, ECF No. 21, at 9.

The court has reviewed the entire record in this case and finds no error in either the magistrate judge's or the ALJ's conclusions in this regard. Hudgins takes issue with the magistrate judge's reliance on his high school employment as evidence he can work. Hudgins discounts this evidence, arguing these jobs were part-time with limited hours, and "[t]he ability to work part-time at three jobs does not support a finding that Plaintiff can perform full-time work with simple instructions." Pl.'s Obj., ECF No. 22, at 3. But Hudgins relies on his ten-year-old school records to show his functional limitation in concentration, persistence, or pace—indeed, this is the only evidence of record documenting any struggles with attention and concentration. The fact that Hudgins was able to perform competitive

7

work at the time, while he was enrolled in school, suggests he was "successful in his employment" despite any attention and concentration issues, as the ALJ noted. (See R. 26.) The court finds no error with the magistrate judge's reasoning here, especially in light of the record evidence taken as a whole.

Hudgins also argues in his objections that the magistrate judge erred in relying on the opinion of Dr. Perez-Lopez in finding substantial evidence supports the ALJ's decision in this case. The magistrate judge referenced Dr. Perez-Lopez's 2009 opinion, along with Hudgins's school records, because there is scant evidence of functional limitations stemming from Hudgins's mental impairments during the relevant period. The magistrate judge makes clear in his report that the record evidence as a whole supports the ALJ's assessment of Hudgins's functional capacity—and it does. As noted above, treating primary care physician Dr. Hudgins's records during the relevant period contain no objective evidence of any functional limitations resulting from Hudgins's mental impairments. More still, the one consultative examination during the relevant period by Dr. Ewen notes Hudgins has normal memory and concentration.

To be sure, the reviewing state agency psychologists found Hudgins was moderately limited in his ability to maintain attention and concentration. Hudgins suggests on brief that their opinions limited him to simple, routine work "without a great deal of interaction," which was meant to address his moderate limitation in concentration, persistence, and pace. Pl.'s Obj., ECF No. 22, at 4. Hudgins argues the ALJ only accounted for his limited ability to interact with the *public*, when she should have considered his limited ability to interact *generally*, in line with the state agency psychologists' findings. Id. But Hudgins misinterprets

state agency psychologist Dr. Entin's statement that he is limited to "simple, routine work that does not require a great deal of interaction." Plainly, the "interaction" referred to is interaction with the public. This is made clear in the body of the reviewing psychologists' opinions, where they found Hudgins was not significantly limited in his ability to work in coordination with or in proximity to others without being distracted by them, and not significantly limited in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. He was moderately limited him his ability to interact appropriately with the general public, and this limitation was incorporated into the ALJ's RFC assessment.

The ALJ adequately accounted for Hudgins's moderate limitation in concentration, persistence, or pace by limiting him to understanding, remembering, and carrying out simple instructions in repetitive, unskilled work that involves only occasional interaction with the general public. In her decision, the ALJ explained that Hudgins sometimes gets nervous and depressed, which could affect his concentration, persistence, and pace, but he generally did not complain of significant problems in these areas to his treating practitioners. Additionally, the 2009 consultative evaluation "revealed moderate, but not marked, impairment to concentration *related to detailed instructions*. The claimant was able to perform simple instructions without difficulty." (R. 22 (emphasis added).) Clearly, she found this impairment did not translate into more restrictive functional limitations.

### III.

In sum, the ALJ explained her RFC assessment in a thorough and well-reasoned opinion and, in so doing, discharged her duty under Mascio, 780 F.3d at 638. Having

reviewed the entire administrative record, the court finds that the magistrate judge was correct in concluding that there is substantial evidence to support the ALJ's decision. As such, the magistrate judge's report and recommendation will be adopted in its entirety.

An appropriate Order will be entered.

Entered: 03-26-2018

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge